# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-1045V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| CHARLES SILVESTRI | \* | Chief Special Master Corcoran |
| | \* | |
| Petitioner, | \* | Filed: August 16, 2021 |
| | \* | |
| | \* | Vaccine Act; Fact Ruling; |
| v. | \* | Six Month Residual Requirement; |
| | \* | Tetanus-diphtheria-acellular |
| | \* | pertussis ("Tdap"); Shoulder |
| SECRETARY OF HEALTH | \* | Injury Related to Vaccine |
| AND HUMAN SERVICES, | \* | Administration (SIRVA); Special |
| | \* | Processing Unit (SPU) |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Michael W. Pottetti, Law Offices of Michael W. Pottetti, Port Jefferson, NY, for Petitioner.*

*Jeremy Fugate, U.S. Department of Justice, Washington, DC, for Respondent.*

### ORDER DENYING RESPONDENT'S MOTION TO DISMISS AND FACT RULING ON SIX MONTH REQUIREMENT[1]

On July 18, 2019, Charles Silvestri filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, et. seq, (the "Vaccine Act" or "Program"). Petitioner alleges that he developed a left shoulder injury related to vaccine administration ("SIRVA") as a result of receiving a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine on January 9, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

After a review of the petition and supporting documents, Respondent filed a Motion to Dismiss, asserting that Petitioner had not established that he suffered from the residual

---

[1] Because this unpublished Order contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

effects of his alleged vaccine-related injury for more than six months after vaccination as required by the Vaccine Act. Respondent's Motion to Dismiss ("Mot."); ECF No. 31. For the reasons discussed herein, Respondent's motion is **DENIED**.

## I.    Procedural History

With his Petition on July 18, 2019, Petitioner filed 11 medical record exhibits as well as affidavits from Petitioner and several of Petitioner's family members. ECF No. 1. Petitioner filed two medical record exhibits on January 25, 2021 (ECF No. 26) and two additional medical record exhibits and a Statement of Completion on February 24, 2021. ECF 29-30.

After conducting a review of the records, Respondent filed a Motion to Dismiss in March 2021, arguing that the "Petitioner's claim does not satisfy the Vaccine Act's severity requirement." Mot. at 1. Specifically, Respondent asserted that contemporaneous medical records "do not document that he experienced the residual effects of his alleged injury for more than six months, or that his injury resulted in inpatient hospitalization and surgical intervention." *Id*. at 3.

On April 27, 2021, Petitioner filed his response to the Motion to Dismiss ("Opp."). ECF No. 33. In it, Petitioner argues that that because he provided contemporaneous medical records establishing that he suffered from his alleged injury for more than five months, as well as a reasonable explanation as to why he discontinued seeking medical care, the requirements of the Vaccine Act have been met. *Id*. at 6.

## II.    Medical History

Prior to his vaccination, Petitioner's medical history does not reflect any record of shoulder pain. *See generally* Ex. 4 at 8-9.[2] On January 9, 2019, Petitioner received a Tdap vaccination in his left deltoid. Ex. 6 at 8. In his affidavit, Petitioner stated that the onset of pain was almost immediate after vaccine administration. Ex. 2 at ¶7. He further stated that the pain continued and worsened, with the range of motion in his left shoulder becoming severely limited. *Id*. at ¶7-8.

On January 28, 2019, Petitioner presented to his primary care provider, Dr. Andrew Radzik. Ex. 4 at 7. The medical record documenting this consultation reveals that Petitioner "on 1/9/19 received Tdap vaccine; shortly after developed pain in left upper

---

[2] Petitioner's relevant medical history includes treatment for anxiety and depression (with panic attack), and hypertension.

arm, near vaccine site, radiating to the shoulder and neck. At times difficulty moving left arm. No swelling or redness. No known injury." *Id*. Petitioner was prescribed Celebrex and Dr. Radzik indicated that an orthopedic evaluation would be considered if Petitioner's pain did not improve. *Id*.

On February 20, 2019, Petitioner presented to Dr. Armand Abulencia, an orthopedic surgeon. Ex. 5 at 1. During his visit, Petitioner complained of left shoulder pain that had been present since January 9, 2019, the date of his vaccination. *Id*. Petitioner stated there was no prior injury. *Id*. Dr. Abulencia found "positive impingement signs" and that "strength of abduction and flexion were diminished." *Id*. at 2. Petitioner was prescribed a Medrol dosepak and discussed both physical therapy and steroid injection. *Id*. at 3. Petitioner was diagnosed with acute bursitis of the left shoulder, impingement syndrome of the left shoulder, osteoarthritis of the left acromioclavicular joint, and left shoulder pain, unspecified chronicity. *Id*. at 2-3.

Beginning on February 25, 2019, Petitioner began treatment with Dr. Raymond A. Semente, a chiropractor. Ex. 7 at 1. At the initial visit, Dr. Semente found Petitioner's active and passive range of motion severely restricted and suggested a treatment plan with laser treatments three times a week for two weeks. *Id*. at 5-6. Petitioner completed the laser treatments on March 11, 2019. *Id*. at 46.

On March 9, 2019, Petitioner presented to the emergency room at St. Catherine of Siena Medical Center. Ex. 10 at 116. Petitioner complained of left shoulder pain that radiated to the left side of his chest. *Id*. at 122. Petitioner received several diagnostic tests, was prescribed a Medrol dosepak and Percocet, and was referred to both orthopedic surgery and neurology for follow up treatment. *Id*. at 155.

On March 11, 2019, Petitioner presented to Dr. Raj Krishnan, a pain management specialist. Ex. 9 at 1. Dr. Krishnan prescribed Gabapentin and encouraged Petitioner to follow up with neurology and orthopedics, and to return in 3-4 weeks. *Id. at* 3.

On March 13, 2019, Petitioner was evaluated by Dr. Justin Mizra, an orthopedist. Ex. 10 at 2. Petitioner reported pain of 6/10 and limited range of motion with stiffness. *Id*. Dr. Mizra's exam noted grossly limited range of motion with pain. *Id*. At a follow-up visit on March 27, 2019, an MRI of the left shoulder revealed an incomplete tear of Petitioner's rotator cuff. *Id*. at 6. Dr. Mizra discussed treatment options with Petitioner and together they decided on conservative treatment and physical therapy. *Id*. at 7. Petitioner noted that Dr. Mizra wanted to administer a cortisone shot, but Petitioner declined at that time. Ex. 16 at ¶6.

Mr. Silvestri attended physical therapy for his left shoulder from April 3, 2019 through June 12, 2019. Ex. 12, 15. Notes documenting the initial physical therapy evaluation, which took place on April 3, 2019, indicate that Petitioner received a Tdap vaccine on January 9, 2019, and experienced left shoulder pain and a decrease in range of motion. Ex. 12 at 4.

Mr. Silvestri's last physical therapy appointment for his left shoulder took place on June 12, 2019. Ex. 15 at 2. The physical therapy notes documenting this visit indicate that Petitioner "returns no new complaints at the shoulder." *Id*. The therapist noted that Petitioner should continue with the current plan and would see his doctor the following week. *Id*. Petitioner then elected to continue with a home exercise regimen to continue strengthening his arm. Ex. 9 at ¶4-5. Petitioner explained that he considered returning to Dr. Mizra but did not due to his desire to avoid a cortisone injection, which he knew Dr. Mizra would recommend based on his prior visits. *Id*. at ¶6.

Petitioner did not seek medical treatment for his left shoulder after June 12, 2019.

### III.   Affidavit Testimony Regarding Six Month Requirement

As previously noted, Mr. Silvetri's medical records do not document any contemporaneous complaints of left shoulder pain after June 12, 2019. However, beginning in July 2019, Petitioner continued to treat his left shoulder with exercises he learned in physical therapy, and with Tylenol and Blue-Emu pain relief cream. Ex. 9 at ¶7. Although he has experienced some improvement, Petitioner stated that he had not regained full strength in his left shoulder and continued, at least through January 23, 2021, to experience "flare-ups" of pain that he managed on his own. *Id*. at ¶8-9.

In his second affidavit, Petitioner stated that he believed, based on his previous appointments with Dr. Mizra, that seeking additional medical treatment for his shoulder would include cortisone injections. Ex. 9 at ¶6. He explained that "because of his anxiety of having further injections in that left arm, he is reluctant to visit physicians that will try to persuade him to get them." *Id*. at ¶8.

### IV.   Discussion

Under the Vaccine Act, a petition for compensation must contain "supporting documentation, demonstrating that the person who suffered [a vaccine related injury] ... suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i). The burden is on the petitioner to establish, by a preponderance of the evidence, the

persistence of a vaccine-caused injury for longer than six months. *Song v. Sec'y of Health & Human Servs.,* 31 Fed. Cl. 61, 65–66, *aff'd,* 41 F.3d 1520 (Fed.Cir.1994). However, dismissal is not appropriate if it appears the parties reasonably contest the length of time that petitioner has suffered from the effects of his alleged vaccine injury. *See, e.g., Faup v. Sec'y of Health & Human Servs.,* No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015).

Although a petitioner cannot establish the length or ongoing nature of an injury merely through his self-assertion, the fact that a petitioner did not receive medical care for the entire six-month period does not necessarily indicate that there are no remaining or residual effects from the alleged injury. *See, e.g., Herren v. Sec'y of Health & Human Servs.,* No. 13-100V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (finding that petitioner suffered from residual symptoms that, due to their mild nature, did not require medical care).

Here, there appears to be no dispute that Petitioner received the Tdap vaccine on January 9, 2019, and he therefore must demonstrate by preponderant evidence that residual symptoms continued through July 9, 2019. *Herren,* 2014 WL 3889070, at *2; *see also Hinnefeld v. Sec'y of Health & Human Servs.,* No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset).

The medical records demonstrate that, in the immediate months following his Tdap vaccination, Petitioner consistently sought treatment for his left shoulder injury. Between January 28, 2019 and March 9, 2019, Petitioner sought care for his shoulder from his primary care provider, as well as an orthopedic surgeon and the emergency room, with primary complaints of left shoulder pain. Ex. 4 at 7; Ex. 5 at 1; Ex. 10 at 116. Additionally, Petitioner received a course of chiropractic care, including laser treatments, from February 25, 2019 through March 11, 2019. Ex. 7 at 1-46. Petitioner also attended physical therapy from April 3, 2019 through June 12, 2019, five months and three days post-vaccination. *See generally* Ex. 12, 15. At the time of his last physical therapy visit, Petitioner had a continuing plan for additional treatment and a follow up with his doctor and was not discharged from treatment. Ex. 15 at 2.

However, following Petitioner's June 12, 2019 physical therapy appointment, there are no contemporaneous medical records documenting his shoulder injury. Nevertheless, Petitioner's affidavits provide evidence that he continued to experience intermittent pain and weakness in his left arm and shoulder through at least January 23, 2021. *See generally* Ex. 9. I find that Petitioner has provided a credible explanation of why he did not seek additional care for his injury after June 12, 2019. Specifically, Petitioner

explained that he suffered from anxiety about further injections in his left arm after his experience with the Tdap vaccination. Ex. 9 at ¶8.[3] Petitioner believed, based on his previous appointments with his orthopedic surgeon, that additional treatment would include cortisone injections. *Id.* at ¶6. Due to his history of anxiety and apprehension of further injections in his left arm after injury from vaccination, this rationale is understandable.

A number of facts better support Petitioner's position on severity. In particular, the medical record documenting Petitioner's June 12, 2019 visit to his physical therapist does not establish that his SIRVA injury was in fact fully resolved as of that date. Ex. 15 at 2. Rather, at the time of the physical therapy appointment, Petitioner remained on a treatment plan, including follow up with his physician the following week. *Id*. Other witness statement evidence corroborate this information. Thus, Petitioner stated that after that appointment he continued to rehabilitate his shoulder on his own, doing exercises he learned in physical therapy and treating pain with over-the counter medications. Ex. 9 at ¶4-5. Petitioner further stated that he continued to have "problems with arm strength and mobility" and "flare-ups" of pain into July and August 2019, and to a lesser degree continuing through at least January 23, 2021. *Id.* at ¶5, 7, 9. Further, the Federal Circuit has held that it is appropriate to credit the lay testimony of petitioner when said testimony does not conflict with the medical records. *See Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1384 (Fed. Cir. 2021) (affirming special master's finding of severity based on petitioner's testimony in the absence of contemporaneous medical records).

Overall – taking into account the remedial nature of the Program, and the reasonable evidence suggesting that sequelae of Petitioner's SIRVA remained beyond his last formal day of physical therapy – the evidence supports a finding that severity has been met. At worst, this case represents a "close-call," and in "the Vaccine Program, petitioners are accorded the benefit of close calls." *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013).

**V.    Conclusion**

**Based on the record as a whole, Petitioner has established that he suffered the residual effects of his vaccine-related injury for at least six months as required by the Vaccine Act.  Therefore, Respondent's Motion to Dismiss is DENIED.**

---

[3] Petitioner has a long history of anxiety, including a panic attack, for which he received medical treatment. *See generally* Ex. 4.

The parties are encouraged to consider an informal resolution of this claim. Accordingly, by no later than September 17, 2021, Petitioner shall communicate a demand to Respondent and file a status report updating the court on the parties' settlement discussions.  Additionally, Petitioner shall file any updated medical records by September 17, 2021.

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master